# In the United States Court of Federal Claims

No. 13-324L
(Filed: May 17, 2018)

* * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| JUANITA CAMPBELL, et al., | Attorney fees; motion for attorney fees and costs; 42 U.S.C. § 4654(c) (2012); reasonable hours; unsuccessful plaintiffs; reasonable rate; historic rate; *Davis County* exception. |
| *Plaintiffs*, | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

* * * * * * * * * * * * * * * * * * * *

*Mark Fernlund Hearne, II*, Clayton, MO, *with whom were Lindsay S.C. Brinton, Meghan S. Largent,* and *Stephen S. Davis* for plaintiffs.

*Jacqueline Camille Brown*, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, Washington, DC, for defendant.

OPINION ON ATTORNEY FEES
_____

BRUGGINK, *Judge*.

This is a takings claim brought pursuant to the Fifth Amendment. Plaintiffs own property underlying a former railroad operating in South Carolina. They assert that the actions of the Surface Transportation Board in issuing a Notice of Interim Trail Use pursuant to amendments to the National Trail Systems Act, 16 U.S.C. § 1247(d) (2012), constituted a taking of their property rights. The parties have settled liability and agreed on $122,466 plus interest as total compensation for fourteen plaintiffs.

The matter is before the court on plaintiffs' motion for an award of attorney fees and other costs pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. § 4654(c) (2012). Plaintiffs seek an award of $1,187,470 in attorney fees and $48,003 for costs incurred. The government opposes plaintiffs' motion, contending that the claimed hours, rates, and a portion of costs are unreasonable.

The motion is fully briefed, and oral argument was held on March 17, 2017, before a different judge. The case was transferred to the undersigned on February 12, 2018. We held a status conference on April 4, 2018, to discuss additional notices of authority and supplements to the fee request. The court concludes that plaintiffs are entitled to an award of attorney fees determined in accordance with the instructions set out in this opinion along with reimbursement for costs in the amount of $33,728. Accordingly, plaintiffs' motion is granted-in-part and denied-in-part.

BACKGROUND[1]

In May 2013, more than fifty named South Carolina landowners filed this rails-to-trails takings claim. Plaintiffs alleged that the government took their land without just compensation in violation of the Fifth Amendment when an 8.5-mile railroad corridor between the cities of Pickens and Easley, South Carolina, was converted to trail use after the Surface Transportation Board issued a Notice of Interim Trail Use pursuant to the National Trail Systems Act, 16 U.S.C. § 1247(d). Through a series of amended complaints, plaintiffs increased to seventy-six the total number of claimants and moved for class certification in September 2013. The United States moved to stay consideration of class certification, arguing that the motion was premature because the source deeds had not yet been reviewed to determine whether each plaintiff had standing. The parties jointly requested a stay of the motion, which the court granted in November 2013. The parties shortly thereafter began negotiations regarding liability and compensation for each claimant.

In a June 6, 2014 status report, defendant agreed in principle to compensate fourteen plaintiffs. Plaintiffs voluntarily moved to dismiss all other claimants on July 3, 2014. After continued negotiations, the parties settled for $122,466 plus interest with respect to those fourteen plaintiffs.

---

[1] The facts recited below are drawn from the undisputed facts set out in the parties' briefing on the motion for attorney fees.

Plaintiffs filed their motion for fees and costs on August 31, 2016, which accounted for work performed through June 2016. The total sought for attorney fees was $689,161.20, representing 1473.10 hours, and $48,003 in costs. After oral argument, plaintiffs filed two supplements to their fee request. The first supplement accounted for work up to March 31, 2017, adding 683 hours and $425,956.90 to the request. The second supplement covers the period of April 2017 through December 2017 and added 104 hours, representing $72,352 in fees. Plaintiffs thus claim in total $1,187,470 for attorney fees,[2] representing 2260 hours, and $48,003 for costs.

The government challenges the fee request, asserting that it seeks compensation for an unreasonable number of hours using excessive rates based on the wrong forum. The government contends that plaintiffs' counsel should be awarded no more than $228,502.25 in fees and $12,692.60 in costs.

DISCUSSION

The URA provides that a successful plaintiff in a proceeding brought under 28 U.S.C. § 1491 (2012), seeking compensation for the taking of property by a federal agency, shall be awarded "such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." 42 U.S.C. § 4654(c).

We are presented with a fee request for nearly $1.2 million for a case in which there was no trial and no dispositive motion practice. Because the parties reached a settlement early, there were no contested motions, briefing, or argument on any issues related to liability or compensation. The only in-court proceeding was for argument on the pending motion for attorney fees. At the time of the March 2017 oral argument on fees, there had been approximately 130 docket entries in this action. Since then there have been more than thirty additional entries, virtually all of which relate to attorney fees.

---

[2] Because historical versus current rates for fees was discussed during oral argument, plaintiffs also provided their fee request in historical rates in their supplements, $1,098,414.90.

3

By our calculation, approximately half of the fees asserted here were incurred after the parties settled liability in June 2014, and the majority of those hours directly relate to the fee request. In addition, virtually nothing of substance has occurred in the approximately thirteen months since oral argument.[3] Although these observations, in themselves, do not constitute grounds for rejecting half of plaintiffs' claimed fees, they are not irrelevant. We believe the early resolution of liability and subsequent lack of complexity of the litigation, along with the excessive time spent on attorney fees, must be incorporated into consideration of plaintiffs' fee request.

I.  REASONABLE ATTORNEY FEE

To determine reasonable attorney fees, we calculate the lodestar by multiplying the number of hours reasonably expended in the case by a reasonable hourly rate. *Bywaters v. United States*, 670 F.3d 1221, 1226–28 (Fed. Cir. 2012). Reasonable attorney fees are those "that [are] sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). To determine the awarded lodestar fee in this case, we address the parties' arguments regarding each component of hours and rates in turn.

   A.  Reasonable Hours

In computing the lodestar, plaintiffs' counsel should be compensated for all time "reasonably expended" on a case. *See Bywaters*, 670 F.3d at 1229 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Plaintiffs bear the burden of demonstrating that the number of hours submitted for award represent a reasonable amount of time expended on the claim. *Id*. Plaintiffs' counsel may not be compensated for hours that would not be properly billed to a client nor for hours that are "excessive, redundant, or otherwise unnecessary." *Id.* Moreover, hours spent on unsuccessful claims that are "distinct in all respects from [plaintiffs'] successful claims" must be excluded. *Id.* at 440. When multiple claims are brought that involve common questions of law, "it may be difficult, if not impossible, to separate out the hours expended on each claim, however, a court 'may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Biery v. United States (Biery III)*, 818 F.3d 704, 712 (Fed. Cir. 2016) (quoting *Hensley*, 461 U.S. at 436–37).

---

[3] For which the court admittedly must share some responsibility.

With this framework in mind, a few basic facts illustrate why this fee request is, at least optically, a challenge. Plaintiffs claim 2260 hours in an action with no substantive motions or briefing and in which in-court activity was limited to argument on the fee request. The amount of compensation ultimately agreed to, without interest, was only $122,466, compared to $1,187,470 claimed for attorney fees. Superficial optics are not the only problem, however. Only one quarter of the claimants were successful in this case, and defendant agreed in principle to compensate them in June 2014. A substantial number of hours incurred prior to June 2014, defendant also argues, were for client development, were incurred on behalf of sixty-two plaintiffs who were ultimately voluntarily dismissed, or were in support of a class certification motion that turned out to be unnecessary.

Time spent on this case falls into two phases. The first was 2013–2014, during which the parties negotiated and settled liability. The second phase was 2015–2017, during which the parties finalized the amount of the settlement, but were primarily focused on litigating the fee request. Approximately 1120 hours were expended during the earlier phase of litigation and another 1140 hours were incurred after the government conceded liability in June 2014. The government's individual objections to plaintiffs' hours are considered in light of that timeline.

      i.      Hours expended on client development are disallowed.

Defendant challenges all hours spent prior to March 11, 2013, when plaintiffs' counsel entered the first retainer agreement with the lead plaintiff in this case, on the grounds that these hours represent "client development," by which it presumably means client solicitation. Plaintiffs incurred 45.9 hours prior to March 11, 2013. The hours appear to be background work for the firm's benefit and would appear not to be chargeable subsequently to a client. *E.g.*, Pls.' Mot. Att'y Fees Ex. 1, at 2 (entries such as "update information regarding potential new trail case;" "begin binder filings for potential representation;" and "management and preparation of town hall materials"). We agree with defendant that the hours spent, primarily by paralegals, prior to engagement of counsel by plaintiffs, should be disallowed. Accordingly we will disallow 45.9 hours claimed prior to March 11, 2013.

After March 11, 2013, through June 2014, defendant points to scattered hours with descriptions such as communication with or regarding "potential plaintiffs," "landowners who attended meeting," "potential new

case," and "potential class members." *Id.* at 2–20. By our calculation, the entries from March 11, 2013, to June 2014 referencing communication or research on "potential plaintiffs" represents 75 hours. *E.g.*, *id.* at 4 ("Communicating with potential plaintiffs regarding suit and logistics."). The hours spent after March 11, 2013, soliciting new clients are similarly not chargeable to a client. The descriptions of these hours often also include compensable work, however, such as client communication, preparing the complaint, or working on land appraisals. As a meaningful amount of the work appears to relate to existing clients as well, we disallow half these hours relating to client solicitation. Accordingly, 37 hours are disallowed.

When calculating recoverable attorney fees, plaintiffs shall first reduce their hours by the client development hours prior to March 11, 2013. Plaintiffs then shall reduce the remaining client development hours after March 11, 2013, by reducing the claimed hours proportionately to the hours each counsel and paralegal dedicated to client development.

        ii.      Hours expended on class certification and unsuccessful plaintiffs are reduced by 30%.

Defendant next objects to the time spent on class certification and unsuccessful plaintiffs. We view the class certification objection as a critique that overlaps with defendant's objection to time spent on unsuccessful plaintiffs, because a number of plaintiffs that were ultimately dismissed were part of counsels' preparation to certify a class. We agree with defendant that the hours expended prior to June 2014 should be reduced to reflect time unnecessarily spent on class certification efforts and with respect to representing sixty-two plaintiffs ultimately dismissed.

Defendant proposes that all 120.1 hours spent on class certification were unreasonable. Although we recognize that class certification might be appropriate in some land-related cases, here it should have been possible to identify the relatively small number of potential landowners. Plaintiffs began with approximately fifty named individuals and only added twenty-six others. It should have been apparent that efforts at class certification were unnecessary, or certainly premature, because title is typically an issue that must be resolved on an individual basis. Moreover, the government in these rails-to-trails cases, at least if a trail is in place or appears likely, has demonstrated a willingness to concede liability and move to damages if it is satisfied as to title.

6

Defendant asserts that 75% of the hours claimed between March 2013 and June 2014 was spent on unsuccessful plaintiffs. There is no reason to think that defendant's requested 75% reduction for unsuccessful plaintiffs is anything other than a transposition of the percentage of unsuccessful plaintiffs against the hours charged. We conclude that although some reduction for time spent on unsuccessful litigants is appropriate, 75% is excessive. No doubt there was some time spent and charged for unsuccessful plaintiffs in contacting and corresponding with them, filing claims on their behalf, researching title for them and ultimately dismissing them. Plaintiffs' records, however, do not distinguish between hours spent on distinct claims or pieces of property. Thus, hours cannot be parsed between successful and unsuccessful plaintiffs. But the bulk of the research and negotiation would have been in support of all litigants, including or primarily for successful ones.

We thus apply a 30% reduction to hours spent between March 11, 2013, and June 2014. We think this adequately accounts for the amount of time plaintiffs spent on unsuccessful plaintiffs as well as the related unproductive effort of pursuing class certification. After reducing the time for client solicitation and unsuccessful plaintiffs, the total hours are 1866 hours.[4]

After deducting the hours for client development, plaintiffs shall reduce the hours submitted through June 2014 by proportionately decreasing the number of hours submitted by each counsel and paralegal during that period.

      iii.    Hours for travel are compensable.

Defendant argues for a 50% reduction to plaintiffs' travel hours to account for the possibility that counsel was working on other cases during travel or not working during travel time. Travel time for this case is time that plaintiffs' counsel were not available to work on other cases. After reviewing the cases submitted by the government regarding travel hours and the claimed travel hours, we find that plaintiffs in this case sufficiently described their time spent traveling. Moreover, the hours related to travel

---

[4] Counsel claims 1120 hours through the June 2014 settlement. We subtract 83 hours for client solicitation, leaving 1037 hours. We reduce those hours by 30% to 726 hours and add that to the remaining 1140 hours.

were not unreasonable in a case involving counsel working from several of the firm's offices across the country with clients in South Carolina.

          iv.      Miscellaneous hours are compensable.

Defendant further objects to a basket of miscellaneous hours, including those spent preparing for summary judgment, unspecified "expert" work, vaguely described partner work, and unrelated matters. After reviewing these hours, we find that they are sufficiently described and related to this case. The majority appear to be related to plaintiffs' strategy for settlement and looking ahead to case management if a settlement was not reached. These hours spent on peripheral details and case strategy were not excessive and thus are allowed.

After oral argument on the fee request, plaintiffs also spent time developing a settlement proposal on fees that defendant objects to as unreasonable on the grounds that defendant had previously unequivocally rejected the same offer. Although the government may have been unwilling to consider a settlement offer on the terms conveyed, given the long pendency of this fee request and the tendency of parties in rails-to-trails cases to discuss settlement of both merits and attorney fees, we do not find plaintiffs' preparation of a settlement proposal on fees to be unreasonable. These hours are allowed.

          v.      Hours expended on the motion for attorney fees are reduced by 400 hours.

We address next the more problematic issue of the time spent on the claim for fees and expenses. The entries describing time spent as work relating to the fee request begin in 2013 and continue with scattered entries through June 2016. In this period, approximately 30 hours are described as work on attorney fees and expenses. Entries relating to attorney fees and expenses begin in earnest in June 2016. The total number of hours referencing preparation and argument of the fee request between June 2016 and March 2017, when the court heard oral argument on fees, is 546 hours. In addition, after March 2017, another 64 hours are described as work on the fee request. We calculate the total number of hours described by counsel as work on fees to be, conservatively, 640 hours. This represents more than half the hours expended after the parties settled regarding the government's liability in June 2014. Approximately 28%, or $336,000, of

the total fee request is claimed for fees on fees.[5] This is almost three times plaintiffs' recovery, $122,466.

We find the hours related to fees to be disproportionate to the result achieved in this case. Not only was an excessive amount of time dedicated solely to the fee request, we believe the accumulation of hours after oral argument was particularly unnecessary. We therefore disallow 400 hours claimed as work relating to fees to bring the hours expended on the fee request closer in line with the relative simplicity of the case as litigated. Accordingly, the total number of hours allowed is reduced to 1466 hours.

As with the foregoing percentage reductions, plaintiffs shall remove hours dedicated to the fee request proportionately according to the number of hours dedicated to the fee request by each counsel and paralegal.

B. Reasonable Rates

Having determined the reasonable number of hours, we now multiply that by a reasonable hourly rate. *See Bywaters*, 670 F.3d at 1225–28. A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, 895 n.11. The parties dispute whether current or historic rates must be awarded, which forum governs the rates, and whether plaintiffs' claimed rates are consistent with the prevailing rates for similar services in the forum.

   i.  Historic rates must be awarded.

We turn first to the government's argument that counsel must be compensated using historic rates to comply with the federal no-interest rule. The no-interest rule states that "interest cannot be recovered in a suit against the [United States] Government in the absence of an express waiver of sovereign immunity from an award of interest." *Library of Congress v.*

---

[5] This is the result of creating a fraction consisting of the hours spent on fees versus the hours claimed in total, 640/2260, and applying the result to the total fee request, nearly $1.2 million.

*Shaw*, 478 U.S. 310, 311 (1986). Because courts construe waivers of sovereign immunity strictly in favor of the federal government, the Supreme Court held that Title VII's provision allowing "costs, and within that category, attorney's fees, does not provide the clear affirmative intent of Congress to waive the sovereign's immunity [for the payment of interest]." *Id.* at 321. In *Shaw*, the Supreme Court explained that delay compensation and interest share the same function and are therefore both prohibited by the no-interest rule. *Id.* at 322.

Defendant argues that awarding attorney fees under the URA using the rates submitted at the end of litigation rather than the historic rates as the work was performed has the effect of awarding plaintiffs interest on their fees that Congress did not permit in text of the URA. The Federal Circuit has affirmed the application of the no-interest rule when awarding attorney fees under the URA. *See Biery III*, 818 F.3d at 714–15.

Plaintiffs respond that more recent Supreme Court authority suggests delay compensation may be an appropriate part of an award, even where the United States has not expressly waived sovereign immunity. Specifically, plaintiffs point to *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283–84 (1989), in which the Supreme Court held that an adjustment for delay was appropriate under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (2012), in a claim against Missouri. Plaintiffs also point to *Perdue,* 559 U.S. at 556, in which the Supreme Court held that compensation for "exceptional delay" in payment of fees may justify current rates or calculating historic rates to reflect their present value for an attorney fees award under 42 U.S.C. § 1988. Plaintiffs analogize to *SUFI Network Servs. Inc. v. United States*, 128 Fed. Cl. 683, 700 (2016), in which Judge Wheeler awarded full current rates in an Equal Access to Justice Act, 28 U.S.C. § 2412 (2012) ("EAJA"), attorney fees award, reasoning that "statements from Congress and the Supreme Court [after *Shaw*] support the conclusion that adjustments for delay advance the policy behind fee-shifting statutes."

We agree with defendant that applying plaintiffs' current rates has the effect of violating the no-interest rule. There has been no waiver of immunity by the United States for an award of interest under the URA. Plaintiffs' reliance on *Jenkins* and *Perdue* is misplaced, because the federal government's immunity was not addressed in either case. 491 U.S. at 278–85; 559 U.S. at 556. *SUFI* is also distinguishable. Fees were awarded under EAJA, 28 U.S.C. § 2412; the government was not substantially justified in its position under section 2412(d); and it had acted in bad faith.

128 Fed. Cl. at 695–97.  The court found that, "under both subsections, [SUFI] is entitled to an award at full, current rates under applicable exceptions."  *Id.* at 697.  The government had "dragg[ed] out" the litigation for twelve years with delay that was "not merely accidental," on top of which counsel had achieved "exceptional results" by securing a damages award in excess of $111 million.  *Id.* at 698.  Not only has the United States not specifically waived immunity for an award of interest under the URA, there has been no exceptional delay in reimbursing plaintiffs in this case.  Thus, plaintiffs must be awarded historic rates.

Plaintiffs' claimed rates are their firm's 2016–2017 rates.  Plaintiffs submitted the motion for attorney fees for hours through 2016, using their 2016 rates, and it is our understanding that plaintiffs used 2017 rates for their second supplement.  After oral argument, plaintiffs' first supplement included a calculation of the fee request using historic rates.  Plaintiffs' submissions do not provide a list of current or historic hourly rates for each attorney, however.  Instead, the government calculated counsels' current and historic hourly rates by breaking down line items in the fee request into hourly rates:

|            | **2013–2014**   | **2015**        | **2016–2017**   |
|------------|-----------------|-----------------|-----------------|
| Partners   | $761 per hour   | $789 per hour   | $819 per hour   |
| Of counsel | $435 per hour   | $510 per hour   | $550 per hour   |
| Associates | $435 per hour   | $445 per hour   | $490 per hour   |
| Paralegals | $190 per hour   | $205 per hour   | $210 per hour   |

Because the rates in 2016–2017 appear to have increased only slightly year-over-year from 2015, we will determine the reasonable rates in the same two phases of litigation as we addressed plaintiffs' hours.  The first phase is 2013–2014, which accounts for all hours from the initiation of the claim to when the government conceded liability.  The second phase is 2015–2017, during which the parties finalized the appraisal and settlement amount and litigated the pending motion.

ii.   The *Davis County* exception does not apply.

Next, we address the question of which legal community is the relevant one to determine a reasonable rate.  Normally the relevant community is the forum of the trial court, or in the case of the United States Court of Federal Claims, Washington, DC.  *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348 (Fed. Cir. 2008).  The Federal Circuit has recognized a "limited exception" to the forum rule, however, in cases "in which the bulk

of the work is done outside of the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower." *Id.* at 1349 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 756–60 (D.C. Cir. 1999) (per curiam)). This exception to the general rule is designed to prevent windfalls to attorneys based solely on difference in rates between forums. *Id.*; *see also Biery III*, 818 F.3d at 710.

Defendant argues that the *Davis County* exception to the forum rule applies because plaintiffs' counsel performed the majority of the work in St. Louis, Missouri, where defendant contends fees are substantially lower than those plaintiffs seek. Regarding where the "bulk of work" occurred, plaintiffs provide no specific information pertaining to the location from which counsel worked. Several of the attorneys billing the majority of hours to the case appear to be based at the St. Louis branch of the firm, although lead counsel, a partner, is based in Washington, DC. Attorneys working from the firm's Los Angeles office and a paralegal in the New York office also cumulatively devoted approximately 200 hours to this litigation. Considering the descriptions counsel provided of the hours billed, counsels' declarations, and the exhibits the government provided, however, it seems clear that the majority of the hours were billed by St. Louis counsel and paralegals.

To apply the *Davis County* exception, the location where the bulk of the work was completed must have "substantially lower" market rates for attorneys than the forum. *Avera*, 515 F.3d at 1349. To compare plaintiffs' claimed rates to St. Louis rates, defendant collected data from Missouri Lawyers Weekly and a variety of Missouri district court attorney fees awards. The government proposes that reasonable rates in St. Louis are:

|            | **2013–2014**   | **2015–2017**   |
|------------|-----------------|-----------------|
| Partners   | $450 per hour   | $525 per hour   |
| Of Counsel | $350 per hour   | $400 per hour   |
| Associates | $300 per hour   | $375 per hour   |
| Paralegals | $150 per hour   | $150 per hour   |

Thus, when we compare the two proposed rates for the 2015–2017 period, the claimed DC rate for partners is 56% more than the St. Louis rates as presented by the government. The difference between rates for of counsel is 37.5%, or $150 per hour. Comparing associates' rates shows

only a 31% difference.  Finally, the difference in paralegal rates is 40%, or $60 per hour.

For the 2013–2014 period, the claimed DC rate for partners is 69% more than the St. Louis rate. The difference between rates for of counsel is 24%, or $85 per hour.  The DC associate rate is 24% more than the St. Louis rate and, similarly, the difference in paralegal rates is 26% in 2013–2014, or $40 per hour.

None of the differences in rates at issue here match the difference in rates present in *Avera* or *Davis County*.  In *Avera,* the DC rate of $598 per hour was nearly three times the local rate of $200.  515 F.3d at 1349–50.  In *Davis County*, the DC rate sought was approximately 70% higher than local rates.  169 F.3d at 757.  The single close comparison in this case is the 2013–2014 difference between partner rates at 69%, but the partner who is lead counsel in this case performed work from DC, not St. Louis, and the other partners similarly performed work outside of St. Louis.

Moreover, the difference between plaintiffs' claimed rates and the government's proposed St. Louis rates is lower in this case than in other cases in which the *Davis County* exception has been used by this court. *See, e.g.*, *Bratcher v. United States*, No. 15-986L, 2018 WL 1225032, at *11 (Fed. Cl. Mar. 9, 2018) (finding the forum rate to be nearly double the St. Louis rate); *Almanza v. United States,* 135 Fed. Cl. 645, 655–56 (2018) (finding the forum rate to be double the local rate).  Thus, because the St. Louis rates are not substantially lower than the claimed DC rates, we will determine reasonable rates under the forum rule.

    iii. Plaintiffs' claimed rates are unreasonable.

Even assuming DC as the proper forum does not mean that plaintiffs' claimed rates are reasonable by default.  Defendant maintains that plaintiffs' claimed rates are excessive because plaintiffs have not established that their rates are consistent with the prevailing market rate for a comparable case, particularly since the framework of rails-to-trails takings claims had been previously established and the parties negotiated settlement early in this case.  The dispute over a reasonable rate boils down to what rates best reflect the market in DC for similar services as those provided in this particular rails-to-trails claim.  The parties present the court with three possible fee ranges for the prevailing market rate: plaintiffs' claimed rates

and two adjusted *Laffey* matrices.[6]  We find that plaintiffs' claimed rates must be adjusted to account for the lack of specific proof regarding prevailing rates for services similar to the work done in this relatively non-complex rails-to-trails claim.

We have reviewed plaintiffs' claimed rates and supporting submissions and have no reason to disagree that their claimed rates may be the firm's actual national rates, and that they do not appear to be excessive when compared to top rates in DC.  Plaintiffs, however, did not demonstrate that their claimed rates are "prevailing in the community for similar services" by lawyers of comparable skill and experience.  Plaintiffs submit a 2016 *PriceWaterhouseCoopers* survey and the 2014 *National Law Journal Billing Survey*, contending that "[t]hese surveys demonstrate that, although Arent Fox is one of the top-fifty Washington, D.C., firms, Arent Fox's hourly rates are consistent with, or lower than, the hourly rates charged by comparable firms." Pls.' Mot. Att'y Fees 4–5.  The two surveys compare Arent Fox's claimed rates to the largest law firms in DC, but firms charging rates comparable to other firms with a similar number of attorneys is not the standard for a reasonable rate.  The surveys do not attempt to parse the types of cases handled by the largest DC law firms or compare those services to the case at hand, as actually litigated.

As we explain above, we view the case as relatively straight forward, and not involving complex legal issues.  Thus, we find plaintiffs have not substantiated their actual rates as the prevailing market rate for similar services.  Although rails-to-trails takings claims can be complex, the basic framework of the law for such claims has been settled, and no new liability or damages issues were involved here.  There were no disputes the court had to resolve concerning title.  In short, progress toward settlement was routine and the government proved willing to settle the fourteen successful plaintiffs' claims without any substantive briefing.  Although we recognize that the relative ease with which plaintiffs achieved success in this case may in part be due to the accumulated expertise of plaintiffs' counsel in handling many rails-to-trails cases, the only real contest here has been over fees, something we are reluctant to reward with fees at the higher end.

---

[6] The *Laffey* Matrix was first proposed in the *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371–72, 374 (D.D.C. 1983), *aff'd in part*, *rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984), *overruled by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).  *Laffey* "set out a Matrix of reasonable rates for attorneys in the Washington, DC metropolitan area who were engaged in complex federal litigation at that time." *Biery III*, 818 F.3d at 712–13 (citing *Laffey*, 572 F. Supp. at 371–72).

As evidence of the prevailing DC market rate both parties compare plaintiffs' claimed rates to an adjusted *Laffey* Matrix[7]: the United States Attorney Office's ("USAO") Adjusted *Laffey* Matrix[8] and the Kavanaugh Matrix[9]. The Federal Circuit has not endorsed either matrix as controlling

---

[7] Since the *Laffey* Matrix proposes rates for work performed in the early 1980s, competing methods of updating it have developed. *Biery III*, 818 F.3d at 713. The methods for updating the *Laffey* Matrix attempt to account for market changes that would affect prevailing market rates for attorneys in the district. Although courts have considered both updated *Laffey* matrices, the Federal Circuit declined to endorse either, because the criticisms regarding the inflation adjustment methods are "are well-founded and reasonable" even though the matrices are a compelling tool for understanding the market rate for complex federal litigation. *Id.*

[8] The first method for updating the *Laffey* Matrix is the USAO's Adjusted *Laffey* Matrix, which the government endorses in this case. The USAO's Adjusted *Laffey* Matrix for years 2003–2014 measures change to the cost of living in the Washington DC metropolitan area "by the Consumer Price Index for All Urban Consumers for Washington-Baltimore . . . as announced by the Bureau of Labor Statistics for May of each year." Def.'s Sur-Reply to Mot. Att'y Fees Ex C. The Federal Circuit noted in *Biery III* that this version of the USAO's Adjusted *Laffey* Matrix "takes a broad basket of goods and services into account, including food and fuel, and may thus yield results that are higher or lower than the average rates private consumers of legal services in the Washington, D.C. metropolitan area actually pay." 818 F.3d at 713 (citing *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14–15 (D.D.C. 2000)).

The USAO's Adjusted *Laffey* Matrix for 2015–2017 measures change to cost of living by adjusting the ALM Legal Intelligence 2010 & 2011 Survey of Law Firm Economics regarding average attorney rates for inflation by using the Producer Price Index-Office of Lawyers index ("PPI-OL"). The 2011 survey data's average hourly rates "are multiplied by the PPI-OL index for May in the year of the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data," and then rounded to the nearest whole dollar. Def.'s Sur-Reply to Mot. Att'y Fees Ex D.

[9] The second method for adjusting the *Laffey* Matrix, which plaintiffs prefer as a comparison to their actual rates, is the "Kavanaugh Matrix," advanced by economist Dr. Michael Kavanaugh, which updates the *Laffey* Matrix based on changes to the Legal Services Index component of the Consumer Price Index. This Matrix is also referred to as the *Salazar*-adjusted *Laffey* Matrix, because it was first applied in *Salazar*, 123 F. Supp. 2d at 14–15. The Federal Circuit

15

with regard to a reasonable attorney fee for Washington, DC, but has suggested that considering an adjusted *Laffey* Matrix may be useful. *Biery III*, 818 F.3d at 713–15. We do not adopt either in this case, but rather use them as helpful comparison points to plaintiffs' submissions regarding a reasonable rate. In this case, defendant argues for the use of the USAO's Adjusted *Laffey* Matrix:

|  | **2013–2014** | **2015–2016** |
| --- | --- | --- |
| 20+ years | $510 per hour | $530 per hour |
| 16–20 years | N/A | $504 per hour |
| 11–19 years | $450 per hour | (11–15 years) $455/hr |
| 8–10 years | $360 per hour | $386 per hour |
| Paralegals | $145 per hour | $154 per hour |

On the other hand, plaintiffs represent that their current, actual billing rates are consistent with the Kavanaugh Matrix:

|  | **2013–2014** | **2016–2017** |
| --- | --- | --- |
| 20+ years of experience | $771 per hour | $826 per hour |
| 11–19 years | $640 per hour | $685 per hour |
| 8–10 years | $567 per hour | $608 per hour |
| Paralegals | $175 per hour | $187 per hour |

To determine reasonable rates, we used the adjusted *Laffey* matrices[10] as a counterpoint to plaintiffs' claimed rates when considering the prevailing market rate.[11] We compare the average of the *Laffey* rates to

---

in *Biery III* noted that the "Kavanaugh Matrix has been criticized for its use of the national CPI, and may thus not be an accurate measure of the relevant community, here the Washington D.C. metropolitan area." 818 F.3d at 713–714 (citation omitted).

[10] We place the rates highlighted by the parties from the Adjusted *Laffey* Matrices on the charts above. The 2016–2017 adjustment on the USAO's Adjusted *Laffey* Matrix provides that attorneys with 31+ years of experience are compensated at $581 per hour, 21–30 years at $543, 8–10 years at $395, and paralegals at $157. The Kavanaugh Matrix provides that attorneys with 20+ years of experience are compensated at $796 per hour, 11–19 years at $661, 8–10 years at $586, and paralegals at $180 for 2015–2016.

[11] When calculating the average between the adjusted *Laffey* matrices and comparing them to plaintiffs' claimed rates, we first took into account that

plaintiffs' claimed rate, determining the average between those two rates, to arrive at the following reasonable rates:[12]

|            | **2013–2014**   | **2015–2017**   |
|------------|-----------------|-----------------|
| Partners   | $701 per hour   | $749 per hour   |
| Of counsel | $435 per hour   | $550 per hour   |
| Associates | $435 per hour   | $490 per hour   |
| Paralegals | $175 per hour   | $190 per hour   |

We find that the rates set out in this table account for the experience of counsel but also reflect the work involved in this claim. After reducing the hours according to the above instructions, plaintiffs shall apply the rates set out in the table immediately above to reach the awarded lodestar fee.

## II. COSTS COMPENSABLE

Finally, the URA also allows for reimbursement to prevailing plaintiffs of reasonable costs actually incurred in connection with the case. 42 U.S.C. § 4654(c). As with attorney fees, plaintiffs bear the burden to submit adequate supporting documentation of their costs. *Hensley*, 461 U.S. at 437. Plaintiffs seek a total of $48,003 in costs, including expert expenses, in this case. The government argues that all but $12,692.60 should be disallowed, because a deduction must also be applied to costs to account for unsuccessful plaintiffs and because plaintiffs have not adequately described the costs incurred.

---

plaintiffs did not submit years of experience for every counsel involved in this case and thus a direct comparison to the *Laffey* rates was not possible. From the submitted affidavits of several of plaintiffs' counsel, we gather that the relevant categories for counsel performing most hours in this case are 20+ years of experience for partners, 11–19 years for of counsel, and 8–10 years for associates. Moreover, the Kavanaugh Matrix and the USAO's Adjusted *Laffey* Matrix do not account identically for years of experience for the 2015–2017 phase. To address the overlap in years, we considered the 11–19 years category of the Kavanaugh Matrix and the 16–20 years category of the USAO's Adjusted *Laffey* Matrix to account for the range of experience of counsel.

[12] Where the final average between plaintiffs' claimed rates and the adjusted *Laffey* matrices resulted in a rate higher than the claimed rates, we have capped the amount at plaintiffs' claimed rate.

17

We agree with the government that plaintiffs' costs should be reduced to account for the lack of success and voluntary dismissal of the majority of plaintiffs. As with the fees incurred prior to the first engagement letter, we deduct plaintiffs' $1438.75 of costs incurred prior to the first engagement of counsel. We encounter the same difficulty in reducing plaintiffs' costs to account for unsuccessful plaintiffs as we did attorney fees: the costs documentation is not broken out by individual plaintiff, but instead demonstrates costs expended on the case as a whole. Thus, to account for the work completed for unsuccessful plaintiffs, we apply the same 20% reduction to costs incurred between March 11, 2013, and June 2014. The costs incurred in that period were $42,160. After the 20% reduction, we find allowable costs to be $33,728.

The government also contends that costs for partner travel and professional service fees from an entity called Juris Temps. Inc. are not adequately described. Both types of costs are sufficiently described for the court to determine that they constituted either travel or support costs related to this case. They also constitute a very limited amount of plaintiffs' costs, approximately $3900. These costs are neither insufficiently described nor unreasonable. Thus, we award plaintiffs costs totaling $33,728.

## CONCLUSION

For the reasons articulated above, we grant-in-part and deny-in-part plaintiffs' motion for attorney fees and expenses. The parties are directed to file a status report by June 8, 2018 submitting attorney fees calculated in accordance with the instructions in this opinion.

                                                s/Eric G. Bruggink
                                                ERIC G. BRUGGINK
                                                Senior Judge